EDWARD CHAUDOIN,

        Plaintiff,

                                    Case No. 15-13871

v.

                                    Paul D. Borman

THOR MOTOR COACH, INC., and        United States District Judge
GENERAL RV CENTER, INC.,

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This action centers around an allegedly defective recreational vehicle that Plaintiff Edward Chaudoin purchased from Defendant General RV Center, Inc. ("**GRV**"), and which had been manufactured in part and sold to GRV by Defendant Thor Motor Coach, Inc. ("**Thor**"). Plaintiff has asserted ten separate causes of action against both Defendants jointly, nine of which arise under Michigan law, and the tenth of which was brought pursuant to the federal Magnuson-Moss Warranty Act ("**MMWA**"), 15 U.S.C. § 2301 *et seq*.

Before the Court are two Motions for Summary Judgment filed separately by the two Defendants. For the reasons stated below, the Court will grant Defendants' Motions for Summary Judgment as to all of Plaintiff's claims except for the product liability claim asserted in Count VII of Plaintiff's Amended Complaint.

# I.  BACKGROUND

## A.  Factual Background

### 1.  Plaintiff's Purchase of the RV and Relevant Documents

On May 16, 2014, Plaintiff bought a recreational vehicle at a trade show from GRV for $130,526.50. The transaction is reflected in the Purchase Agreement between Plaintiff and GRV. (ECF No. 25, Defendant General RV Center, Inc.'s Motion for Summary Judgment ("**Def. GRV's Mot.**") Ex. 2, Purchase Agreement; Def. GRV's Mot., Ex. 1, Deposition of Edward Chaudoin 15:13-15.) The vehicle (the "**RV**"), which Plaintiff bought new, was a 2015 model 37KT Challenger, and as part of the transaction Plaintiff traded in a 2001 Coachmen Santara that he owned. (Purchase Agreement at 2; Chaudoin Dep. 12:15-18.) The purchase price included a service contract with non-party CornerStone RV ("**CornerStone**") which Plaintiff purchased through GRV for $4,505. (Purchase Agreement at 2.) Plaintiff testified that he negotiated with GRV representatives over the price, but not over any other terms of the purchase. (Chaudoin Dep. 160:9-14.)

Before buying the RV, Plaintiff spoke with a GRV salesman, who represented that there was a factory warranty on the vehicle. (Chaudoin Dep. 23:15-17.) Plaintiff testified that his perception at the time was that Thor was warranting the coach while Ford Motor Company was warranting the motor and frame, but that his understanding in any case was that his warranty was "bumper to

2

bumper" and that Thor would have primary responsibility for repairs. (Chaudoin Dep. 40:17-42:3.) Plaintiff did not perform any research into Thor products or speak to any representatives from Thor prior to making the purchase. (Chaudoin Dep. 21:5-13.)

Plaintiff was presented with, reviewed, and signed various documents at the time of the purchase. These documents are significant in one way or another to nearly all of the claims asserted in this action, and so their relevant provisions are set forth below.

### i. Purchase Agreement (GRV)

On the Purchase Agreement, a block of text above Plaintiff's signature states:

> THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATION BEYOND THIS AGREEMENT NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN HAVE BEEN MADE WHICH ARE NOT CONTAINED ON THIS DOCUMENT PURCHASER HAS NOT RELIED ON ANYTHING WRITTEN INTO THIS PURCHASE AGREEMENT SUCH THAT NOTHING ELSE IS THE BASIS OF THE BARGAIN OR IS ENFORCEABLE AGAINST GENERAL RV, EVEN IF ALLEGED TO BE A MISREPRESENTATION BY SIGNING BELOW, PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS THE TERMS

OF THIS AGREEMENT, INCLUDING THOSE PRINTED ON THE REVERSE SIDE, WHICH INCLUDE . . . AN "AS IS" CLAUSE . . .

(Purchase Agreement at 2.)

The reverse side of the Purchase Agreement contains additional terms, two of which are relevant here. Paragraph 12 on the reverse side states:

PURCHASER UNDERSTANDS THAT THERE MAY BE WRITTEN WARRANTIES COVERING THIS RV, BUT THAT THESE WARRANTIES ARE OFFERED BY THE MANUFACTURERS OF THE RV, ITS COMPONENTS AND/OR ITS APPLIANCES THESE WARRANTIES HAVE BEEN PROVIDED TO PURCHASER AND PURCHASER HAS READ AND UNDERSTANDS THESE WARRANTIES PURCHASER UNDERSTANDS THAT DEALER OFFERS NO WARRANTIES, EXPRESS OR IMPLIED, ON THIS RV **THIS RV IS SOLD "AS IS" BY DEALER, AND DEALER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

(*Id.* at 3 (emphasis in original).)

Paragraph 13 on the reverse side states:

Except in states that do not allow limitation of damages, the following limitation of damages shall apply DEALER DISCLAIMS ANY INCIDENTAL AND/OR CONSEQUENTIAL DAMAGES, SUCH THAT PURCHASER SHALL NOT BE ENTITLED TO INCIDENTAL OR CONSEQUENTIAL DAMAGES FROM DEALER Also, since this is an **"AS IS"** purchase as to Dealer, Purchaser cannot rescind nor revoke acceptance of this contract, or the vehicle, or return the vehicle to Dealer.

(*Id.* (emphasis in original).)

Plaintiff testified that he was handed the Purchase Agreement and it was explained to him, whereupon he signed it. (Chaudoin Dep. 26:18-22.) Plaintiff testified that he did not read the Purchase Agreement "word for word," and while he admitted that he could have requested the opportunity to do so, he also testified that "[i]f I would have read all the paperwork that they gave me word for word, I'd have been there for 16 hours." (Chaudoin Dep. 27:12-14.)

### ii.  Limited Warranty (Thor)

Most of the documents that accompanied the purchase of the RV are not in dispute. There is a significant factual dispute regarding one of the purchase documents, however, and it is over whether Plaintiff received Thor's Limited Warranty at the time of sale. (ECF No. 26, Defendant Thor Motor Coach Inc.'s Motion for Summary Judgment ("**Def. Thor's Mot.**") Ex. 1, Limited Warranty.) Plaintiff maintains that the owner's manual he received from GRV listed the Limited Warranty in its table of contents, but that the specific pages containing the Limited Warranty had been removed from the manual itself. (ECF No. 29, Plaintiff's Response to Defendant Thor Motor Coach Inc.'s Motion for Summary Judgment ("**Pl.'s Thor Resp.**") at 4; Pl.'s Thor Resp., Ex. 1, RV Owner's Manual Warranty Section.) Thor admits that the pages had been removed, but claims that this was because the Limited Warranty was changed after the owner's manual was

printed. (ECF No. 31, Defendant Thor Motor Coach Inc.'s Reply Brief to Plaintiff's Response to Motion for Summary Judgment ("**Def. Thor's Repl.**") at 2; Pl.'s Thor Resp., Ex. 2, Defendant Thor Motor Coach's Answers to Plaintiff's First Set of Interrogatories.) The parties agree that Plaintiff obtained the Limited Warranty separately from the owner's manual at some point, but disagree on precisely when. Thor claims that Plaintiff received it at the time of sale. (Def. Thor's Repl. at 2.) Plaintiff claims that he demanded it from GRV after he began having problems with the RV, and GRV gave him a copy only then. (Chaudoin Dep. 39:14-40:12.)

While the time at which Plaintiff received the Limited Warranty is in dispute, the contents of the Limited Warranty are not. (Def. Thor's Mot., Ex. 1, Limited Warranty; Pl.'s Thor Resp., Ex. 11, Defendant Thor's Alleged, Post-Sale Limited Warranty.) By its terms, the Limited Warranty lasted until the earliest of 15,000 miles or 12 months after delivery of the RV by an authorized dealer, with a longer period (24,000 miles or 24 months from the purchase date) for "the steel or aluminum frame structure, only, of the sidewalls (excluding slide outs), roof, and rear and front walls." (Limited Warranty at 2.)

Under a section entitled "LIMITATION AND DISCLAIMER OF IMPLIED WARRANTIES," the Limited Warranty states:

IMPLIED WARRANTIES, IF ANY, ARISING BY WAY OF STATE LAW, INCLUDING ANY IMPLIED WARRANTY OF

MERCHANTABILITY AND ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED IN DURATION TO THE TERM OF THIS LIMITED WARRANTY AND ARE LIMITED IN SCOPE OF COVERAGE TO THOSE PORTIONS OF THE MOTORHOME COVERED BY THE LIMITED WARRANTY. WARRANTOR DISCLAIMS ALL IMPLIED AND EXPRESS WARRANTIES, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ON COMPONENTS AND APPLIANCES EXCLUDED FROM COVERAGE AS SET FORTH BELOW. There is no warranty of any nature made by Warrantor beyond that contained in this Limited Warranty. No person has authority to enlarge, amend or modify this Limited Warranty. The dealer is not the Warrantor's agent but is an independent entity. Warrantor is not responsible for any undertaking, representation or warranty made by any dealer or other person beyond those expressly set forth in this Limited Warranty. Some states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

(Limited Warranty at 2.)

Also of particular importance here is that under the section entitled "LEGAL REMEDIES," the Limited Warranty states:

THIS LIMITED WARRANTY DOES NOT EXTEND TO "FUTURE PERFORMANCE". ANY ACTION TO ENFORCE THIS LIMITED WARRANTY OR ANY IMPLIED WARRANTIES SHALL NOT BE COMMENCED MORE THAN 90 DAYS AFTER THE EXPIRATION OF THE APPLICABLE WARRANTY COVERAGE PERIOD DESIGNATED ABOVE. UNLESS PROHIBITED BY STATE LAW, THE PERFORMANCE OF REPAIRS SHALL NOT SUSPEND THIS LIMITATIONS PERIOD FROM EXPIRING AND ANY LEGAL ACTION TO ENFORCE WARRANTY RIGHTS

AGAINST WARRANTOR MUST BE BROUGHT WITHIN THE STATE OF INDIANA.

(*Id.*)

### iii.        Registration and Acknowledgement (Thor)

Relevant to Plaintiff's receipt (whenever it took place) of Thor's Limited Warranty is the fact that on the date that he purchased the RV, Plaintiff signed Thor's Registration and Acknowledgement of Receipt of Warranty and Product Information. (Def. Thor's Mot., Ex. 2, Thor Registration and Acknowledgement.)

Under its header, the Thor Registration and Acknowledgement prominently states "IMPORTANT THE CUSTOMER IS REQUIRED TO READ THIS DOCUMENT BEFORE SIGNING IT." (Thor Registration and Acknowledgement at 2.) The next paragraph states as follows:

> We have listed several items which will help acquaint you with your new recreation vehicle. You the purchaser, should not submit this form until (1) you have received and reviewed the Limited Warranty and owner's manual; (2) you have had the opportunity to inspect and opertate [*sic*] the vehicle; (3) all items have been demonstrated and/or explained to you; (4) the dealer has answered any questions you may have, and; (5) you find the vehicle in good condition. The dealer is not authorized to deliver this vehicle until this has been done and both you and the dealer have signed this form.

(*Id.*)

Only Plaintiff's signature appears on the Thor Registration and Acknowledgement. Above the signature line (and Plaintiff's signature on it), the

document states in relevant part:

> Before I purchased this vehicle, I received, read and agreed to the terms and conditions of Thor Motor Coach's 1 page Limited Warranty, published within its Owner's Manual . . . I understand and agree that any legal action for breach of express or for breach of implied warranties that may arise by operation of law must be filed within ninety (90) days of the expiration of the applicable warranty coverage period as defined within the limited warranty . . . I also agree that the selling dealer is not an agent for Thor Motor Coach but is an independent company with no authority to make any representation or promise for Thor Motor Coach[.]

(*Id.*)

As noted above, Plaintiff testified that he first saw the Limited Warranty when he obtained a copy of it from GRV after noticing that the pages that purportedly contained it were missing from the owner's manual he had received. (Chaudoin Dep. 39:14-40:12.) He did not ask to see the Limited Warranty any time prior to that because he "thought there was no need" since "[i]t was a new vehicle." (Chaudoin Dep. 40:13-16.) And whether he received it at the time he purchased the RV or at some point later, Plaintiff testified that he never read the Limited Warranty. (Chaudoin Dep. 124:9-10.)

### iv. Warranty Disclaimer (GRV)

Also included among the documents reviewed and signed by Plaintiff at the time of the purchase was a GRV document entitled "General RV Arbitration, 'AS IS' and Warranty Disclaimer Form, and Acknowledgement of Michigan Law and

Michigan Forum Controlling." (Def. GRV's Mot., Ex. 3, GRV Warranty Disclaimer.)

The GRV Warranty Disclaimer is a one-page document reiterating several of the key terms in the Purchase Agreement. Among other things, the GRV Warranty Disclaimer states that the signer understands: (1) that the Purchase Agreement is the only document that represents an agreement with GRV; (2) that the signer has no right to revocation, rescission, or repurchase because the vehicle was purchased "AS IS"; (3) that GRV offers no express or implied warranty and any warranties on the vehicle are from manufacturers; (4) that any such manufacturer warranties have been provided to the signer; and (5) that the signer is not entitled to any incidental or consequential damages, provided that applicable state law allows limitation of damages. (*See id.* at 2.)

Above Plaintiff's signature, the GRV Warranty Disclaimer reads: "General RV has answered all of my questions regarding my purchase to my satisfaction I am satisfied with the RV' s current condition, and I have read and understand this document." (*Id.*) Plaintiff testified that he "skimmed through" this document before signing it. (Chaudoin Dep. 30:4-8.)

> ### v. Confirmation of Understanding of Purchase Agreement (GRV)

Another GRV form reviewed and signed by Plaintiff reiterated that he (as

the undersigned) had the opportunity to review the "fully completed contract" and have any questions answered to his satisfaction, and that he fully understood the "terms and conditions of the sales agreement presented to [him]." (Def. GRV's Mot., Ex 4, Confirmation of Understanding of Purchase Agreement.)

Plaintiff testified that he "skimmed through" the paragraphs on this form as well. (Chaudoin Dep. 36:14-23.) He further testified as follows:

> Q These [paragraphs] talk about, in particular, for example, the second one states, all my questions regarding the sales agreement was answered to my satisfaction before I signed the agreement. Did you agree with that statement?
> A Well, I thought at the time that they were telling me everything I needed to know.
> Q Okay. I'm going to have you read each one of those statements, just to yourself, and ask you if you agree that those were accurate?
> A I would say, pretty much I understood everything.
> Q Okay, and you agreed with those statements at the time you signed this?
> A At the time I signed it, yeah.

(Chaudoin Dep. 36:24-37:12.)

### vi. Service Call Agreement (GRV)

Plaintiff reviewed and signed a separate Service Call Agreement with GRV, which stated that while the buyer was encouraged to obtain any warranty repairs through local service providers, GRV would send repair staff to service the RV at the buyer's location if the buyer could not have the necessary repairs done locally. (Def. GRV's Mot. Ex. 5, GRV Service Call Agreement.) The GRV Service Call

Agreement outlined the amounts that GRV would charge the buyer for servicing the vehicle at the buyer's location and for towing the vehicle to the "servicing dealer" closest to the buyer's location, as well as the circumstances under which GRV would facilitate Plaintiff's seeking reimbursement for repair costs from a manufacturer. (*Id.*)

> The GRV Service Call Agreement begins with the following language:

> It is important for you to be aware of the Manufacturer's warranty policy regarding your recreational vehicle/unit since General RV sold it to you "AS IS," and since General RV does not issue any warranties whatsoever, express or implied, and because all warranties received by you are solely issued by the manufacturer of your recreational vehicle/unit[.]

(GRV Service Call Agreement at 2.)

Plaintiff acknowledged in his deposition testimony that he signed the GRV Service Call Agreement after he "skimmed through it." (Chaudoin Dep. 38:3-7.)

### vii. Title Application

The Title Application signed by Plaintiff itself included language—close to and above the signature field but nearly so small as to be illegible—representing that the undersigned understood that any applicable warranties were offered by manufacturers, that the RV was sold to him "AS IS," and that GRV disclaimed all express and implied warranties. (Def. GRV's Mot. Ex. 6, Title Application.)

### viii.        Cornerstone Service Contract

In connection with his purchase of the RV, Plaintiff also bought from GRV an extended service contract with non-party CornerStone for $4,505. (Purchase Agreement at 2.) The service contract specifies that "[t]his Contract is between You and the Obligor (hereinafter referred to as We, Us, or Our)[.]" (Def. GRV's Mot., Ex. 8, Cornerstone RV Service Contract at 2.) The CornerStone Service Contract contains various provisions, including a provision specifying that the contract's duration was 60 months or 75,000 miles from the date of purchase, and a provision stating that this term of coverage included "all manufacturer, dealer, and/o[r] other applicable warranties." (*Id.*) The document was signed both by Plaintiff and by a representative of GRV, which is referred to in the document as the "SELLING DEALER." (*Id.*)

Plaintiff testified that he "looked through [the CornerStone Service Contract] like I looked through everything else" presented to him in the transaction, that at the time of purchase he understood the CornerStone Service Contract took effect "when the factory warranty ended," and that he was not aware of GRV providing him with any other warranties. (Chaudoin Dep. 34:6-36:8.)

### 2.        Plaintiff's Problems with the RV

On or shortly after Plaintiff purchased the RV on May 16, 2014, he took the vehicle home. (Chaudoin Dep. 45:23-46:4.) Shortly thereafter, Plaintiff testified,

he left on his first weekend trip in the RV, and noticed at the outset of the trip that the water pump was broken. Plaintiff spent eight hours at GRV's repair facility to have the pump fixed and accordingly shortened the trip by a day. (Chaudoin Dep. 47:5-49:12.) On the trip, Plaintiff also noticed issues with the paint job, the windshield wipers, the radio, and the television. (Chaudoin Dep. 50:19-52:12.)

Between that time and the end of May of 2015, when Thor took possession of the RV, Plaintiff took the vehicle in to be serviced a number of times. Plaintiff testified that the pattern that characterized that year or so was that he would become aware of a malfunction or other problem with the RV, he would take the vehicle to GRV to be repaired, he would inspect the repairs, after which he would take the RV home and begin using it again, and soon after that he would notice additional problems. (Chaudoin Dep. 62:1-7.) According to a summary of repairs that Plaintiff's counsel sent to both Defendants around the time that Plaintiff purported to revoke his acceptance and arrange for the RV's return to Thor, Plaintiff took the vehicle in for repairs on 10 different occasions between May 2014 and March 2015, in which 54 separate components of the vehicle were serviced. (*See* ECF No. 28, Plaintiff's Response to Defendant General RV Center, Inc.'s Motion for Summary Judgment ("**Pl.'s GRV Resp.**") Ex. 4, GRV Revocation Letter at 5-6.)

By the time Plaintiff took his first extended trip with the RV in January of

2015, the RV had been taken in for repairs five times. On or around January 20, 2015, Plaintiff was in Georgia with his fiancée during that trip, and as Plaintiff was exiting the RV to refuel at a small-town gas station, one of the steps broke as he stepped on it, causing Plaintiff to fall and injure his face. (Chaudoin Dep. 91:2-92:7.) Plaintiff testified that he bled from his nose for approximately two hours, but chose not to seek medical treatment because of the remoteness of the area that he was in. (92:9-16.) Plaintiff and his fiancée drove the RV to a Camping World retail and repair facility in Lake Park, Georgia, and stayed at the nearby campgrounds for several days while they waited for a replacement step to arrive and the steps to be repaired. While they were waiting, the RV's furnace broke down, and also had to be repaired. (Chaudoin Dep. 102:22-106:4.)

### 3. Plaintiff's Return of the RV

After GRV had completed a set of repairs around the end of April of 2015, and after Plaintiff noticed continuing issues with the RV after those repairs had been done, he contacted Thor about picking up the RV, and provided Thor with a list of needed repairs. (Chaudoin Dep. 126:19-128:1.) Plaintiff testified that his intention was to permanently return the RV, but that he gave Thor a list of repairs in the event that Thor did not take the vehicle back. (Chaudoin Dep. 131:20-132:6.)

Around this time, on April 30, 2015, Plaintiff's attorney sent letters to GRV, Thor, and Thor's registered agent, which outlined the maintenance issues that had arisen over the past year and expressed Plaintiff's intention to return the RV to Thor in exchange for the down payment he had made. (GRV Revocation Letter; Pl.'s Thor Resp., Ex. 8, Thor Revocation Letter.) The letter to GRV stated that GRV was in breach of any and all express or implied warranties, demanded rescission of the Purchase Agreement, and stated that the letter constituted notice of Plaintiff's revocation of acceptance under Mich. Comp. Laws § 440.2608. (GRV Revocation Letter at 3-4.) The letter to Thor (and the identical copy sent to Thor's registered agent) requested the return of Plaintiff's down payment and repossession of the RV by Thor. (Thor Revocation Letter at 3, 7.) All three letters were accompanied by an "Evidentiary Memo," which listed the purchase date of the RV and summarized repairs that Plaintiff had obtained (as well as their costs to him, where applicable) on ten different occasions between May of 2014 and March of 2015. (GRV Revocation Letter at 5-6; Thor Revocation Letter at 4-5, 8-9.)

Thor picked up the RV from Plaintiff on or around May 20, 2015. (Pl.'s Thor Resp. at 15.) Thor remains in possession of the RV. (Def. Thor's Mot. at 15.)

**B.      Relevant Procedural History**

Plaintiff filed suit against both Defendants in the Circuit Court of Livingston County on October 2, 2015, and the action was removed to this Court on

November 3. (ECF No. 1, Notice of Removal to Federal Court.) Plaintiff filed an Amended Complaint on November 30, 2015 (ECF No. 8, Am. Compl.), which Defendants jointly answered on December 10. (ECF Nos. 12, 15.)

The Amended Complaint asserts ten claims against Defendants jointly: breach of express and implied warranties (Count I); revocation of acceptance (Count II); breach of contract (Count III); violation of the MMWA (Count IV); unjust enrichment (Count V); violation of the Michigan Consumer Protection Act ("**MCPA**"), Mich. Comp. Laws § 445.903 (Count VI); product liability (Count VII); fraudulent misrepresentation (Count VIII); innocent misrepresentation (Count IX); and silent fraud (Count X). (Am. Compl. at 5-22.)

The Scheduling Order entered by this Court on January 22, 2016 set the close of discovery at October 26, 2016 and the cutoff date for dispositive motions at January 24, 2017. (ECF No. 20.)

On February 5, 2016, Defendants filed a Notice of Non-Party Fault pursuant to Michigan's comparative negligence statute, Mich. Comp. Laws § 600.6304.[1] (ECF No. 21, Notice of Non-Party Fault.) In it, Defendants asserted that the allegedly defective step that Plaintiff claims caused him to fall and injure his face was manufactured by non-party Lippert Components, Inc. ("**Lippert**"), and was in

---

[1] This provision requires that juries in personal injury actions under Michigan law determine the comparative fault of all parties "that contributed to the death or injury . . . regardless of whether the person was or could have been named as a party to the action." Mich. Comp. Laws 600.6304(1)(b).

fact the subject of a safety recall in late 2015. (*See id.* at 1-2.) Defendants also attached three documents related to that recall as exhibits to the Notice. (*See id.*, Exs. A-C.) Accordingly, Defendants argued, "Lippert may be a non-party that is wholly or partially at fault for Plaintiff's alleged injury." (*Id.* at 2.)

Defendants filed the instant Motions for Summary Judgment on January 11, 2017. (ECF Nos. 25, 26.) Plaintiff filed Responses on February 1, 2017. (ECF Nos. 28, 29.) Each Defendant filed a Reply on February 15, 2017. (ECF Nos. 30, 31.)

The Court conducted a hearing on the instant Motions on April 6, 2017. At the hearing, the Court observed that the "LEGAL REMEDIES" portion of Thor's Limited Warranty contains a clause stating that legal action to enforce rights under the Limited Warranty must be brought in the state of Indiana. After the hearing, the Court entered two orders: one directing the parties to file supplemental briefs as to whether Indiana law should apply to Plaintiff's claims against Thor, and one ordering the parties to facilitative mediation pursuant to E.D. Mich. L.R. 16.4. (ECF Nos. 32, 33.) The parties filed supplemental briefs on Indiana law on April 24, 2017 and May 8, 2017. (ECF Nos. 34, 35.) In June 2017, the parties notified the Court that they had completed facilitation and were unable to settle the case.

## II.    LEGAL STANDARDS

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (Borman, J.) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*,

355 F.3d 515, 533 (6th Cir. 2004)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.    DISCUSSION

For the reasons detailed below, the Court will grant summary judgment to both Defendants on the sole federal claim that Plaintiff has asserted against each Defendant under the Magnuson-Moss Warranty Act ("**MMWA**"), 15 U.S.C. § 2301 *et seq*. Further, the Court will grant summary judgment as to all of Plaintiff's state-law claims with the sole exception of his product liability claim, regarding which the Court has determined that Plaintiff has raised a genuine issue of material fact sufficient for that claim to survive summary judgment.

### A.    Federal Claims

Plaintiff asserts his MMWA claim against each Defendant, but the basis for each Defendant's alleged violation of the MMWA differs. Plaintiff argues that Thor violated the MMWA in various ways but predominantly by failing to abide by the federal minimum standards set forth in the statute, and that GRV violated the MMWA by impermissibly attempting to limit implied warranties that arise under applicable state law, and that would otherwise be enforceable against GRV. For the reasons articulated below, Plaintiff's MMWA claims against both

Defendants fail as a matter of law, and so the Court will grant summary judgment to Defendants on Count IV.

### 1.    Magnuson-Moss Warranty Act (Count IV)

The MMWA creates a private right of action by which consumers can enforce warranties in certain circumstances. Specifically, any consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief" in federal court. 15 U.S.C. § 2310(d).

The remedy available to plaintiffs in MMWA actions depends on the nature of the warranty, and in this regard the statute distinguishes between express full warranties, express limited warranties, and implied warranties.

Express full warranties must meet four conditions under the MMWA: (1) the warrantor must "as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty;" (2) the warrantor may not limit the duration of implied warranties; (3) the warrantor may not "exclude or limit consequential damages for breach of any written or implied warranty" on the product, unless the text of the warranty conspicuously permits as much; and (4) the warrantor must refund or replace a product that has a defect that has not been remedied after a

"reasonable number of attempts" by the warrantor. 15 U.S.C. § 2304(a).

Any written warranty that by its terms does not meet these standards is considered an "express limited warranty." And while the provision quoted in the paragraph above creates a "refund or replace" consumer remedy for breaches of express full warranties, the MMWA is "silent as to the types of remedies available for breach of an express limited warranty. Thus, when a manufacturer only offers a limited warranty, Courts look to state law to determine the plaintiff's rights to damages or other legal and equitable relief." *Sautner v. Fleetwood Enterprises, Inc.*, No. 05-73252, 2007 WL 1343806, at *9 (E.D. Mich. May 8, 2007).

Lastly, the MMWA provision governing implied warranties relevantly provides that

> [n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

15 U.S.C. § 2308(a). The exception to this rule is that an implied warranty "may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." *Id.* § 2308(b).

Here, Plaintiff claims that Thor violated the MMWA's standards for written warranties, and is therefore required to refund or replace the RV. Plaintiff also argues that GRV violated the MMWA provision on implied warranties by disclaiming all implied warranties while at the same time entering into a service contract with Plaintiff. The Court rejects both of these contentions.

### i. Thor offered Plaintiff an express limited warranty only, and so Plaintiff is not entitled to the MMWA's "refund or replace" remedy.

Thor argues that because its Limited Warranty clearly did not meet the MMWA's standards for an express full warranty, it is an express limited warranty for MMWA purposes, and Plaintiff is not entitled to the "refund or replace" remedy provided for in 15 U.S.C. § 2304(a)(4). Plaintiff maintains that not only is that remedy appropriate in this case, but also that Thor violated the MMWA by failing to comport with the statute's rules governing the contents of the warranties in 15 U.S.C. § 2302, failing to designate an express warranty as a "limited warranty" under 15 U.S.C. § 2303, and illegally limiting implied warranties under 15 U.S.C. § 2308.

Thor's answers to all of these contentions are grounded in Thor's claim that it gave Plaintiff a limited warranty only; meanwhile, as noted above, Plaintiff claims that he did not receive the Limited Warranty at the time of purchase, and that it is therefore invalid. The validity of Thor's Limited Warranty is a critical

issue for several of the claims in this action, and so it merits close analysis here.

The parties do not differ over the contents of the Limited Warranty. They also agree that the Limited Warranty had been removed from the owner's manual that was given to Plaintiff, and that Plaintiff received a copy of the Limited Warranty separately from the manual. The crucial dispute is over when he received it: Defendants argue that Plaintiff got it on the date of purchase (although separately from the owner's manual), while Plaintiff contends that he did not receive it until later, when he demanded a copy from GRV after the RV began malfunctioning.[2] The issue of the Limited Warranty's validity thus encompasses two questions: (1) when did Plaintiff receive the document, and (2) what (if any) effect does that fact have on its enforceability?

Plaintiff testified that he did not set eyes on the Limited Warranty until he demanded it from GRV, and from this testimony he urges the Court to infer that he was not provided with the document on the day he purchased the RV. Acknowledging that the Limited Warranty had been removed from the owner's manual, Thor takes the position that it was given to Plaintiff separately at the time of the purchase, but Thor has not put forward competent evidence—testimonial or otherwise—that directly supports this assertion. Thor does highlight that Plaintiff

---

[2] The precise date on which Plaintiff believes that he received the Limited Warranty from GRV is not clear from the record, and Plaintiff testified only that he obtained a copy of the Limited Warranty from GRV "[a]fter I started having all these problems." (Chaudoin Dep. 39:24-40:1.)

signed the Registration and Acknowledgement, and thereby represented that he "received, read and agreed to the terms and conditions of Thor Motor Coach's 1 page Limited Warranty, published within its Owner's Manual." (Thor Registration and Acknowledgement at 2.) But purely for the purposes of determining *when* Plaintiff received the Limited Warranty, the Court cannot take Plaintiff's representation on the Registration and Acknowledgement at face value, since Plaintiff testified not only that he did not see the Limited Warranty until he demanded it from GRV, but also that he did not fully read all of the documents that he signed on the date of purchase. Resolving all factual ambiguities in Plaintiff's favor at this stage, the Court cannot find that Plaintiff received Thor's Limited Warranty on the date he purchased the RV.

The question then becomes whether the Limited Warranty was still valid even if Plaintiff did not receive it until not long after he bought the RV, when he obtained a copy from GRV. The Court finds that it was valid.

Particularly important to this conclusion is Plaintiff's representation in the Thor Registration and Acknowledgement that he "received, read and agreed to the terms and conditions of Thor Motor Coach's 1 page Limited Warranty, published within its Owner's Manual . . . ." (Thor Registration and Acknowledgement at 2) That representation might not prove that he had actually received and read the Limited Warranty, but it was enough to put him on notice that such a document

governed the terms of his purchase.

> Michigan law permits a party to incorporate terms or documents from other writings into their contracts. Where a contract references another instrument for additional contract terms, it is as though the contents of the referenced writing had been repeated in the contract. Neither physical attachment nor specific language is necessary in order for a document to be incorporated into a contract, but the incorporating instrument must clearly evidence an intent that the writing be made a part of the contract. A party cannot later plead ignorance as an excuse if the contract is clear on its face that such terms were intended to be incorporated and failure to obtain an explanation of a contract demonstrates negligence.

*Dow Corning Corp. v. Weather Shield Mfg., Inc.*, 790 F. Supp. 2d 604, 611 (E.D. Mich. 2011) (internal citations omitted). Michigan law also provides that language limiting or modifying express warranties must be consistent with language creating such warranties and may not be "unreasonable," and that language limiting or modifying implied warranties must be "conspicuous." Mich. Comp. Laws § 440.2316(1)-(2). The commentary to these statutory provisions explains that these they are designed "to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." Mich. Comp. Laws § 440.2316 cmt. 1.

Plaintiff cannot claim to have been surprised by the Limited Warranty. Even on the assumption that he did not receive the Limited Warranty on the date of purchase, Plaintiff did sign a document (the Thor Registration and Acknowledgement) that made references to the Limited Warranty in a manner specific enough to put Plaintiff on notice that a document called "Limited Warranty" and issued by Thor was part of the transaction he was entering into. Those references were conspicuous because the one of the primary purposes of the Registration and Acknowledgement was to ensure that Plaintiff recognized that the purchase was subject to the Limited Warranty, and the Limited Warranty was referenced at two separate points on the Thor Registration and Acknowledgement. The references to the Limited Warranty in the Registration and Acknowledgement, moreover, clearly imply the existence of a *specific* document: the fact that the words "Limited Warranty" are capitalized do this to some degree, but the point is driven home by the reference to the particular length ("1 page") and location ("published within [the] Owner's Manual") of the Limited Warranty. (Thor Registration and Acknowledgement at 2.) Plaintiff did not sign a generic form simply indicating that he had reviewed all documents that he had been handed, or that he had had all of his questions answered; he signed a form representing that he had received, read, and agreed to the terms in a document specifically identified by name, length, and location. This was enough to put him on notice that a document

entitled "the Limited Warranty" governed his purchase of the RV, and it was then his responsibility to inquire if he found it was missing from the owner's manual—all the more so given that it was (or should have been) apparent that several sequentially numbered pages were missing from the section of the manual identified in the manual's table of contents as containing the Limited Warranty. (Pl.'s Thor Resp., Ex. 1, RV Owner's Manual Warranty Section at 5-8.) *See HRL Land or Sea Yachts v. Travel Supreme, Inc.*, No. 1:07-CV-945, 2009 WL 427375, at *4 (W.D. Mich. Feb. 20, 2009) ("A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty. A party who does not understand the terms of a contract has a duty to inquire about its contents.") (internal citations and quotation marks omitted).

Plaintiff points to the "ENTIRE UNDERSTANDING" clause printed above his signature on the Purchase Agreement, and argues that that clause should estop Thor from invoking terms in any documents that were not exchanged on the purchase date. This argument fails for two reasons. First, that clause is clear on its face that it only applies against GRV: it provides that the Purchase Agreement represents the "ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER," and later that "NOTHING ELSE IS THE BASIS OF THE BARGAIN OR IS ENFORCEABLE AGAINST GENERAL RV." (Purchase

Agreement at 2.) Second, this argument assumes that Plaintiff relied on the "ENTIRE UNDERSTANDING" clause to some degree, and that assumption is undermined both by Plaintiff's testimony that he did not read much of the documentation he received on the date of purchase, and by the fact that Plaintiff registered no apparent objection to the copy of the Limited Warranty he later received from GRV—and indeed had repairs done pursuant to that warranty.

Accordingly, the Court finds that Thor's Limited Warranty was valid. This, in turn, entitles Thor to summary judgment on the claims that Plaintiff has asserted against it under various provisions of the MMWA. First, Plaintiff argues that nothing in the owner's manual that he received on the day of the purchase "satisfied the thirteen enumerated terms or items in 15 USC §2302" (Pl.'s Resp. at 17), but the Limited Warranty does comply with this MMWA provision, which sets forth a list of content requirements for written warranties. The Limited Warranty also complies with 15 U.S.C. § 2303, which requires that limited warranties be clearly designated as such.

Nor has Plaintiff raised a genuine issue of material fact as to Thor's having violated 15 U.S.C. § 2308, which in certain circumstances prohibits a supplier from disclaiming or modifying implied warranties as to a product when the supplier has made a written warranty as to that same product. The Limited Warranty was clearly a written warranty, but the only limitation it made on implied

warranties was to set their duration to be the same as that of the written warranty, and this is expressly permitted by the statute.[3] *See* 15 U.S.C. § 2308(b) (providing that "implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty").

Most importantly, the Limited Warranty defeats Plaintiff's claim that he is entitled to relief under 15 U.S.C. § 2304(a)(4). This subprovision of the MMWA provides that when a defective product or part is subject to an express full warranty, the warrantor may be required to either refund the consumer's money or replace the product or part, if the warrantor is unable to cure the defect. *See* 15 U.S.C. § 2304(a)(4). But the "refund or replace" remedy is not available when the

---

[3] The Limited Warranty also sets the scope of implied warranties to be the same as that of the Limited Warranty itself, and therefore "disclaims" implied warranties as to items already excluded from the Limited Warranty's coverage. But a later section ("WHAT THE WARRANTY DOES NOT COVER") makes clear that what the Limited Warranty excludes are things like components that are functional but whose design the consumer dislikes, normal wear and tear, owner maintenance, and parts that were not manufactured by Thor and/or are covered by their own warranties. (See Limited Warranty at 2.) The text of the MMWA, in any case, contemplates the limitation of implied warranties as to products or components that the supplier has in fact covered under a written warranty. *See* 15 U.S.C. § 2308(a) ("No supplier may disclaim or modify . . . any implied warranty to a consumer *with respect to such consumer product* if . . . such supplier makes any written warranty to the consumer *with respect to such consumer product* . . . .") (emphasis added). Accordingly, any limitations in scope that Thor made to implied warranties through the Limited Warranty do not violate 15 U.S.C. § 2308.

warranty at issue does not meet the MMWA's enumerated standards for express full warranties. As this Court has explained,

> [t]he MMWA breaks down express warranties into two categories: "full" and "limited." To be classified as "full," a warranty must meet the minimum definition of "full warranty" under the Act. If the warranty does not meet the definition of "full warranty," then the warranty, for purposes of the Act, is a "limited warranty."

*Zanger v. Gulf Stream Coach, Inc.*, No. 05-CV-72300-DT, 2005 WL 3163392, at *8 (E.D. Mich. Nov. 28, 2005). 15 U.S.C. § 2304, which provides for the "refund or replace" remedy, sets forth the standards for a "full warranty":

> In order for a warrantor warranting a consumer product by means of a written warranty to meet the Federal minimum standards for warranty--
>
> > (1) such warrantor must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty;
> >
> > (2) notwithstanding section 2308(b) of this title, such warrantor may not impose any limitation on the duration of any implied warranty on the product;
> >
> > (3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and
> >
> > (4) if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be). . . . If the warrantor replaces a component part of a

consumer product, such replacement shall include installing the part in the product without charge.

15 U.S.C. § 2304(a).

Here, the durational limitations imposed in the Limited Warranty disqualified Thor's warranty from being a "full warranty" under the MMWA, since 15 U.S.C. § 2304(a)(2) provides that full warranties may not include "any limitation on the duration of any implied warranty on the product." Accordingly, none of the "Federal minimum standards for warranty" set forth in § 2304(a) applies to Thor's warranty, and as Thor's warranty is not an express full warranty, Plaintiff is not entitled to § 2304(a)(4)'s "refund and replace" remedy. *See Miekstyn v. BMC Choppers*, No. 266439, 2007 WL 1062198, at *3 (Mich. Ct. App. Apr. 10, 2007) ("Limited warranties are not subject to the federal minimum standards set forth in 15 USC 2304(a). Thus, plaintiffs could not predicate their MMWA claim on defendants' alleged failure to conform with any requirements set forth in 15 USC 2304(a).") (internal citations omitted).

For these reasons, Thor is entitled to summary judgment on Plaintiff's MMWA claim.

ii.     **GRV did not make a written warranty to or enter into a service contract with Plaintiff, and so GRV is not liable to Plaintiff under the MMWA.**

GRV did not make an express warranty to Plaintiff at all, so the only potential source of MMWA liability for GRV is 15 U.S.C. § 2308, which generally prohibits a supplier from limiting implied warranties (as GRV did in the Purchase Agreement and in the Warranty Disclaimer) when the supplier has made a written warranty to or entered into a service contract with a consumer. *See* 15 U.S.C. § 2308(a). The MMWA defines "service contract" as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8).

GRV argues that since it did neither of these things, its disclaimer of implied warranties did not run afoul of § 2308. GRV draws a distinction between a supplier's selling a third-party warranty or service contract (*i.e.*, the CornerStone Service Contract in this case) on the one hand, and actually entering into or adopting a third party's warranty or service contract on the other. GRV supports this distinction by citing *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, No. 1:07-CV-945, 2009 WL 427375 (W.D. Mich. Feb. 20, 2009), in which the United States District Court for the Western District of Michigan concluded that neither the sale of a third-party warranty by a supplier to a consumer, nor even a supplier's purchasing a third-party warranty *for* a consumer, constitute "making a warranty" on the supplier's part under the MMWA. *See id.* at *6.

Plaintiff's position is that two of the GRV purchase documents, taken together, constitute a service contract under the MMWA: the CornerStone Service Contract and the Service Call Agreement. The CornerStone Service Contract was a third-party extended service contract that GRV (as the "selling dealer") sold to Plaintiff on behalf of non-party CornerStone. (CornerStone Service Contract at 2.) The Service Call Agreement, signed by Plaintiff and a GRV sales agent on the date Plaintiff purchased the RV, encourages the buyer to service the vehicle locally, but states that "if local repairs are not available or beyond local firms['] capability, General RV will service your recreational vehicle at your location," and goes on to specify fees that will be assessed for local service calls and for towing of the vehicle to other servicers, depending on what the circumstances call for. (Service Call Agreement at 2.)

The CornerStone Service Contract is clear on its face that it is a contract between Plaintiff and third-party CornerStone, and so that document alone does not constitute a warranty by or service contract with GRV. The Court finds the analysis set forth in *HRL* to be persuasive in this regard. Central to that analysis was the well-established proposition that "providing another [party's] warranty without adopting that warranty . . . does not constitute the making of an express warranty by the supplier." *HRL*, 2009 WL 427375, at *6 (collecting cases). Under that principle, the court in *HRL* held that the defendant supplier did not make a

34

warranty on specific components of a recreational vehicle under the MMWA, where the supplier had validly disclaimed all warranties on the vehicle, and where the purchase documents at issue included three separate third-party warranties on those specific components—two of which warranties were sold to the buyer by the supplier on behalf of the third-party servicers, and one of which the supplier itself purchased from a third-party servicer for the buyer. *See id.* The *HRL* court concluded that holding "that [the supplier], who disclaimed any warranty covering the [vehicle], is liable for repairs on the entire RV merely because it separately sold a warranty for tires and paint or agreed to pay for a warranty on a battery would not be consistent" with the underlying purposes of the MMWA. *Id* at *7.

Plaintiff argues that the Service Call Agreement between Plaintiff and GRV makes *HRL* inapposite in two respects: first, because GRV agreed in the Service Call Agreement to be the provider of repairs under the CornerStone Service Contract; and second, because unlike the third-party warranties for component parts in *HRL*, this case involves a supplier's sale to a consumer of a third-party contract for service of the entire vehicle. The Court rejects both of these arguments.

First, the Service Call Agreement does not amount to an adoption by GRV of any warranty or service contract reflected in the CornerStone Service Contract, or any other document. This is clear as to warranties from the opening language of

the Service Call Agreement: it begins with reminders that GRV "sold [the RV] to you 'AS IS,' . . . [GRV] does not issue any warranty whatsoever, express or implied, and . . . all warranties received by you are solely issued by the manufacturer of your recreational vehicle/unit." (Service Call Agreement at 2.) Nor does the Service Call Agreement constitute a "service contract" under the MMWA, as it is not "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8). Besides the fact that the Service Call Agreement does not specify any "fixed period of time" or "specified duration," it is clear from the face of the document that the purpose of the Service Call Agreement is to put the buyer on notice that if he or she enlists GRV to perform maintenance on the vehicle for which GRV would then be reimbursed (*e.g.*, by Thor under the Limited Warranty, or by CornerStone under the CornerStone Service Contract), or if the buyer enlists GRV to transport the vehicle to "the closest servicing dealer," the buyer would then be responsible for reimbursing GRV for the transportation costs, since "no manufacturer will compensate our service department for the cost of traveling to and from your recreational vehicle/unit for warranty repair." (Service Call Agreement at 2.) It is presumably for this reason that the Service Call Agreement "urges [the buyer] to obtain any warranty repairs locally, if possible." (*Id.*) The RV was under warranty (as least as to many of its parts) by Thor, and was

subject to a separately negotiated and purchased service contract with CornerStone; nothing in the Service Call Agreement demonstrates that GRV adopted either of these obligations, and indeed the express language of that document is to the contrary.

Second, Plaintiff's attempt to distinguish *HRL* because what was argued to be a service contract in that case was for component parts of the vehicle—unlike the Service Call Agreement, which does not appear to be so limited—omits important language from the *HRL* decision, and as a result, Plaintiff's citation to *HRL* is significantly divorced from its context. In *HRL*, the court first found in circumstances very similar to those present in this case that the supplier had not made a warranty to the consumer because it had merely provided (without adopting) the warranties of third parties. *See HRL*, 2009 WL 427375, at *6. The court went on to explain in the alternative that even if the supplier's providing of third-party warranties to the consumer somehow *did* create warranties of the supplier's own, this would not have violated 15 U.S.C. § 2308, since that provision prohibits a supplier from disclaiming implied warranties as to the same product that it has issued a written warranty for, and so this prohibition would not be violated by a supplier who disclaims implied warranties for a product overall but provides written warranties for individual components of that product. *See id.* at *7. But crucially, before reaching that alternative holding, the *HRL* court plainly

held that the supplier had not made its own warranties by simply providing the consumer with third-party warranties, and this Court sees no need to take the analysis any further than that in the instant case.

In summary, GRV (1) sold Plaintiff a vehicle that was subject to a validly limited manufacturer warranty (the Limited Warranty) and a third-party contract for service coverage beyond what Plaintiff was entitled to under the manufacturer warranty (the CornerStone Service Contract); and (2) at most, agreed to provide maintenance that was covered by one of these two arrangements but required that Plaintiff pay the expenses not reimbursable to GRV by the servicing companies. Thor did not violate the MMWA because the Limited Warranty was valid; GRV did not violate the MMWA because it offered neither a written warranty nor a service contract to Plaintiff, rendering its limitation of implied warranties valid as well. Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's MMWA claim in Count IV of the Complaint.

## B. State Claims

The bulk of Plaintiff's claims are asserted under state law. These include breach of express and implied warranties (Count I), revocation of acceptance (Count II), breach of contract (Count III), violation of the MMWA (Count IV), unjust enrichment (Count V), violation of the MCPA (Count VI), product liability (Count VII), fraudulent misrepresentation (Count VIII), innocent misrepresentation

(Count IX), and silent fraud (Count X). (Am. Compl. at 5-22.)

Before analyzing these claims, the Court determines as a threshold matter that notwithstanding the forum clause in the Limited Warranty (which required that actions to enforce warranty rights against Thor be brought in the courts of Indiana), Michigan law governs the non-federal claims asserted in this action. The forum clause directs the parties to litigate in the courts of a particular jurisdiction, but it does not on its face compel the application of any particular jurisdiction's law. Given that the formation of the contracts—and nearly all of the conduct—that gave rise to this lawsuit occurred in Michigan, and given that Plaintiff expressly asserted many of his non-federal claims under Michigan statutory law, it seems more than reasonable to assume that even an Indiana court would apply Michigan law to these claims. *See Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind. Ct. App. 1999) ("Indiana's choice of law rule for contract actions calls for applying the law of the forum with the most intimate contacts to the facts."). More important here, though, is the principle that "[u]nlike jurisdictional defects, venue objections can be waived." *Al-Muhaymin v. Jones*, 895 F.2d 1147, 1149 (6th Cir. 1990). The parties have litigated this case under Michigan law since Plaintiff first filed it in the Michigan courts, and so any objection that Thor may have had to the application of Michigan law has been waived.

The Court's analysis of Defendants' arguments in favor of summary judgment on Plaintiff's state-law claims is contained in the following sections. In the end, Defendants are entitled to summary judgment on all but one of them: the product liability claim asserted in Count VII of the Amended Complaint.

### 1. Breach of Express and Implied Warranty (Count I)

Michigan law provides for both express and implied warranties. Express warranties are created in three ways:

> (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Mich. Comp. Laws § 440.2313.

There are also three forms of implied warranty under Michigan law. First, any contract for sale involving a seller that is a merchant with respect to the kind of goods sold contains an implied warranty of merchantability, and that implied warranty guarantees the quality of the goods sold in six enumerated respects.[4]

---

[4] Specifically, to be "merchantable," the goods must be at least such as:
  (a) pass without objection in the trade under the contract description; and

Mich. Comp. Laws § 440.2314(1)-(2). Second, the implied warranty of fitness for a particular purpose requires, where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, . . . that the goods shall be fit for such purpose." Mich. Comp. Laws § 440.2315. Third, an implied warranty "may arise from course of dealing or usage of trade." Mich. Comp. Laws § 440.2314(3).

Warranties can be excluded in Michigan, though this is subject to a few limitations. "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other," and "negation or limitation [of warranties] is inoperative to the extent that such construction is unreasonable." Mich. Comp. Laws § 440.2316(1). Any contractual language that attempts to exclude the implied warranty of merchantability "must mention merchantability and in case of a writing must be conspicuous," and an exclusion of the implied

_____

(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require; and
(f) conform to the promises or affirmations of fact made on the container or label if any.

Mich. Comp. Laws § 440.2314(2).

41

warranty of fitness for a particular purpose "must be by a writing and conspicuous." *Id*. § 440.2316(2). Lastly, Michigan law specifically provides that "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Id*. § 440.2316(3)(a).

On the breach-of-warranty claims that Plaintiff asserts in Count I of the Amended Complaint, the Court will grant summary judgment to both Defendants: to GRV because it validly disclaimed all warranties and sold the RV to Plaintiff "as is," and to Thor because Plaintiff's breach of warranty claim against it is time-barred pursuant to the terms of the Limited Warranty.

### i. Plaintiff has not raised a genuine issue of material fact as to any breach of warranty by GRV.

Among the purchase documents that Plaintiff reviewed (or at least had the opportunity to review) and signed, indications that the RV was being sold to him "as is" appeared in at least eight separate paragraphs and five separate documents. Several of those documents also conspicuously stated that GRV offered no express or implied warranties. These representations, GRV argues, unambiguously precluded the existence of any express or implied warranties under Michigan law.

Plaintiff makes two distinct arguments in response to this, and both focus on GRV's asserted disclaimer of one or more implied warranties. (There is not much of a case to be made that any of GRV's purchase documents constituted a written warranty.) First, and most predominantly, Plaintiff argues that GRV's implied warranty disclaimers were invalid under 15 U.S.C. § 2308, a contention that is also central to the MMWA claim against GRV that is analyzed above. Second, Plaintiff highlights the language in the Michigan warranty statute stating that "as is" terms in a sale contract can limit warranties "unless the circumstances indicate otherwise," Mich. Comp. Laws § 440.2316(3)(a), and argues that that exception is met here. Both of these arguments lack merit.

Invalidating any warranty disclaimer by GRV under 15 U.S.C. § 2308 could only be premised on a finding that GRV either made a written warranty or entered into a service contract with Plaintiff. As discussed above, Plaintiff has not raised a genuine issue of material fact regarding either of these possibilities. The Court therefore rejects the suggestion that GRV's disclaimer of warranties is affected in any way by the MMWA.

Plaintiff also argues that GRV's repeated use of the phrase "as is" and similar language did not exclude implied warranties because "circumstances indicat[ed] otherwise" pursuant to the exception in Mich. Comp. Laws § 440.2316(3)(a)—specifically, because Plaintiff reasonably understood the phrase

"as is" to refer to purchases of used goods rather than new.[5] Plaintiff does not provide any authority to support the proposition that "as is," in the context of new rather than used goods, should actually be understood to mean "devoid of any defects." In fact, there is ample precedent to the contrary. *See, e.g., Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 309, 313 (E.D. Mich. 2005) (granting summary judgment for a recreational vehicle dealer on warranty claims based on defects in the vehicle because the purchase agreement contained an "as is" clause); *see also Lenawee Cty. Bd. of Health v. Messerly*, 417 Mich. 17, 32 (1982) (holding that where a contract for a new home contained an "as is" clause, the buyer assumed the risk of unknown latent defects). Broadly speaking, adopting the interpretation of § 440.2316(3)(a) that Plaintiff urges would render "as is" clauses meaningless in a large number of conceivable situations.

A fraudulent representation by a seller can constitute the sort of "circumstances" that invalidate the effect of an "as is" clause. *See Lenawee Cty. Bd. of Health*, 417 Mich. at 32 n.16. But Plaintiff has not identified any specific affirmative misrepresentation by GRV, and so this is also insufficient as a basis for a conclusion that the circumstances surrounding Plaintiff's purchase of the RV indicated, contrary to the express and consistent language in the purchase

---

[5] Asked during his deposition what he understood "as is" to mean when he bought the RV, Plaintiff responded: "It means the condition that it's in. And being in brand new condition, it should be in better condition than what it was." (Chaudoin Dep. 29:14-24.)

documents, that GRV was not excluding implied warranties.

GRV's warranty disclaimers were valid under Michigan law: they were conspicuous, they were in writing, and they made specific reference to merchantability. Plaintiff has not raised a jury question as to a breach of warranty by GRV, and so the Court will grant summary judgment to GRV on Count I.

### ii.   Plaintiff's breach of warranty claims as to Thor are time-barred.

Unlike GRV, Thor did issue a warranty to Plaintiff. Thor argues, however, that any claim for breach of warranty by Plaintiff is time-barred, since the Limited Warranty provides that any action for breach of any express or implied warranty must be filed within 90 days of the Limited Warranty's expiration, and the Limited Warranty expired at the earlier of one year or 15,000 miles. A cause of action for breach of warranty accrues "when the breach occurs," and "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Mich. Comp. Laws § 440.2725(2). The Limited Warranty issued to Plaintiff by Thor expressly does not extend to future performance (*see* Limited Warranty at 2), and so the cause of action accrued on the date of delivery: May 16, 2014. The latest date that the Limited Warranty could

have expired was therefore May 16, 2015, and so the latest date that Plaintiff could have filed suit within the statute of limitations was August 17, 2015. Plaintiff filed suit on October 2, 2015. (ECF No. 1, Notice of Removal to Federal Court Ex. A, Summons and Complaint.)

Plaintiff argues that Thor's attempt to reduce the limitations period to 15 months was invalid. He makes two distinct arguments to that effect, focusing first on language in the Thor Registration and Acknowledgement that stated that delivery by the dealer was not authorized until certain conditions were met, and then on the fact that the Limited Warranty was not actually provided to him at the time of purchase. He also argues that to whatever extent Thor's modification of the limitations period *was* valid, it was unconscionable.[6]

---

[6] Independently from his arguments on the validity of Thor's modified limitations period, Plaintiff maintains that the Michigan Uniform Commercial Code ("**UCC**") provision at Mich. Comp. Laws § 440.2725—under which the limitations period starts running at tender of delivery except where the warranty explicitly extends to future performance—does not actually apply to his claims against Thor at all. Instead, Plaintiff argues that the limitations period applicable in this case is that of Michigan's non-UCC limitations statute, which provides that "[i]n actions for damages based on breach of a warranty of quality or fitness the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered." Mich. Comp. Laws § 600.5833.

Although Plaintiff does not cite case law supporting this argument, the Michigan Supreme Court has held that the UCC statute of limitations provision "was not meant to apply to actions between consumers and manufacturers who were never in any commercial relationship or setting." *Southgate Cmty. Sch. Dist. v. W. Side Const. Co.*, 399 Mich. 72, 78 (1976). This does not affect the ultimate question of whether Thor validly shortened the limitations period, however. *See DeFrain v. State Farm Mut. Auto. Ins. Co.*, 491 Mich. 359, 372 (2012) ("[A]n unambiguous

The Thor Registration and Acknowledgement reviewed and signed by Plaintiff stated that "you should not submit this form until . . . you have received and reviewed the Limited Warranty and owner's manual" and until the undersigned had the opportunity to inspect the vehicle, ask questions of the dealer, and determine that the vehicle was in good condition. (Thor Registration and Acknowledgement at 2.) The form also stated that "[t]he dealer is not authorized to deliver this vehicle until this has been done and both you and the dealer have signed this form." (*See id.*) Plaintiff argues that since GRV did not comply with the conditions or sign the form before delivering the RV to him, its subsequent delivery was invalid and therefore grounds for rescission of the agreement, or at least for a finding that the limitations period did not begin to run when the RV was delivered. Plaintiff has not, however, provided any legal authority that would support a conclusion that these facts are enough to invalidate the delivery for either of these purposes, or indeed that would suggest that the terms cited by Plaintiff were conditions precedent to the delivery of the vehicle. Accordingly, the Court finds this argument to be unpersuasive.

Plaintiff also maintains that the absence of the Limited Warranty from the owner's manual he received on the date of purchase is enough to invalidate the

---

contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy.") (*quoting Rory v. Continental Ins. Co.*, 473 Mich. 457, 470 (2005)).

Limited Warranty, given the "entire understanding" clause set forth elsewhere in the purchase documents. The Court rejects this argument for the same reasons as it rejected the argument in the context of Plaintiff's MMWA claims, discussed above.

Finally, Plaintiff argues that Thor's attempt to reduce the limitations period was unconscionable because the Limited Warranty was not presented until after the purchase, the particular term could not be negotiated, the term was in miniscule print, and the disparity in bargaining power between the parties was significant. The Court rejects this argument as well.

The Michigan UCC does not expressly define unconscionability, though a comment to the pertinent provision characterizes it a question of whether contract terms are "one-sided." Mich. Comp. Laws § 440.2302 cmt. 1. Michigan court decisions on the concept more generally tend to frame it as a two-pronged test: "(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?" *Hubscher & Son, Inc. v. Storey*, 228 Mich. App. 478, 481 (1998); *see also Liparoto Const., Inc. v. Gen. Shale Brick, Inc.*, 284 Mich. App. 25, 30 (2009) ("For a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. 'Procedural unconscionability exists where the

weaker party had no realistic alternative to acceptance of the term. . . . Substantive unconscionability exists where the challenged term is not substantively reasonable.'") (internal citations omitted) (quoting *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 143–44 (2005). The latter prong is a prerequisite to any invalidation of a contract for unconscionability; even contracts that are procedurally lopsided may be enforced if the challenged provision is not substantively unreasonable. *See Paulsen v. Bureau of State Lottery*, 167 Mich. App. 328, 335–36 (1988). And to be substantively unconscionable, a contractual "term must be more than merely disadvantageous; rather, 'the inequity of the term [must be] so extreme as to shock the conscience.'" *Vittiglio v. Vittiglio*, 297 Mich. App. 391, 404 (2012) (quoting *Clark*, 268 Mich. App. at 144).

In view of these authorities, Plaintiff's unconscionability argument is unpersuasive. Reduction of a four-year statutory limitations period to fifteen months is a substantial change, to be sure, but the Court is not prepared to conclude that it is so extreme as to shock the conscience. And while the contract between Plaintiff and Defendants smacks somewhat of adhesion, it was not even necessarily procedurally unconscionable. That the Limited Warranty was presented after the purchase was ultimately harmless for the reasons discussed above. Plaintiff's contention that the print size was "microscopic" (Pl.'s Thor Resp. at 13) is not entirely accurate, but the print size can hardly be said to matter at any rate given

Plaintiff's testimony that he "skimmed" all of the documents and that he didn't read the Limited Warranty even after he did receive it. (Chaudoin Dep. 38:3-6, 124:9-10.) Plaintiff did not attempt to negotiate any terms with GRV besides the purchase price, and felt "no need" to see the Limited Warranty before he began having problems with the RV because "[i]t was a new vehicle." (Chaudoin Dep. 40:13-16.)

This leaves only disparate bargaining power as a consideration, and while that is at least arguably present in this case, Michigan law is clear that that alone cannot be the basis for a finding of unconscionability, particularly if the contractual term at issue is not oppressive or substantively unreasonable. *See Paulsen*, 167 Mich. App. at 336 ("Even if a contract is one of adhesion . . . , a challenged provision remains enforceable if it is substantially reasonable and not oppressive or unconscionable.").

In the end, Plaintiff's arguments that the Limited Warranty's reduction of the limitations period was ineffective are unavailing. Because Plaintiff filed this action outside of the validly shortened limitations period, the Court will grant summary judgment to Thor on Count I.

### 2. Revocation of Acceptance (Count II)

Michigan law allows a buyer to revoke an acceptance of a lot or unit of goods "whose nonconformity substantially impairs its value to him" if he accepted

the lot or unit "(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Mich. Comp. Laws § 440.2608.

Both Defendants are entitled to summary judgment on this claim: GRV because its valid disclaimer of warranties precludes a revocation claim, and Thor because revocation claims cannot be maintained against remote manufacturers.

### i. Plaintiff's revocation claim as to GRV is precluded by GRV's valid disclaimer of warranties.

A revocation claim requires that the item in question manifest some form of "nonconformity [that] substantially impairs its value" to the buyer. Mich. Comp. Laws § 440.2608(1). "Buyers may not revoke their acceptance for nonconformity when the dealer has disclaimed all warranties." *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, No. 1:07-CV-945, 2009 WL 427375, at *7 (W.D. Mich. Feb. 20, 2009) (applying Michigan law); *see also Davis v. LaFontaine Motors, Inc.*, 271 Mich. App. 68, 82 (2006) ("[F]or the purposes of revocation under MCL 440.2608, nonconformity is a failure of the goods sold to conform to legitimate expectations arising from the contract. . . . Because plaintiffs purchased the vehicle 'as is,' the vehicle, even with the alleged defects, conforms to the contract and therefore

necessarily conforms to the parties' legitimate contractual expectations. Plaintiffs got the vehicle for which they bargained; there was no nonconformity.").

Plaintiff's primary argument for revocation depends on the assumption that the MMWA renders GRV's warranty disclaimers invalid, which is incorrect for the reasons set forth above. Plaintiff also reminds the Court that factual questions should be viewed in the light most favorable to Plaintiff and "at the very least, require discovery depositions." (Pl.'s GRV Resp. at 14-15.) Discovery has closed, and Plaintiff has not presented the Court with any evidence of a factual issue regarding GRV's warranty disclaimer. The Court will grant summary judgment to GRV on Count II.

> ii. **Plaintiff's cannot maintain a revocation claim against Thor as a remote manufacturer.**

Michigan law is clear that "the remedy of revocation of acceptance is not available against a manufacturer." *Henderson v. Chrysler Corp.*, 191 Mich. App. 337, 342 (1991). The revocation remedy provided for in Mich. Comp. Laws § 440.2608

> is typically utilized against an immediate seller. This section allows a
> buyer to revoke his acceptance of a lot or commercial unit whose
> nonconformity substantially impairs its value to him. There is nothing
> to indicate that the Legislature intended the revocation of acceptance
> of a contract to apply to parties not in privity of contract. Acceptance
> under the UCC concerns the relationship between a buyer and a
> seller[.] Thus, revocation is inextricably connected to the contractual

relationship between a buyer and a seller. This rationale includes the concept of contractual privity between the parties.

*Id.* at 341–42; *see also Pidcock v. Ewing*, 371 F. Supp. 2d 870, 877 (E.D. Mich. 2005) (plaintiffs had no revocation claim against "remote manufacturers not in privity with them"); *Rokicsak*, 219 F. Supp. 2d at 818 ("In Michigan, the availability of the UCC remedy of revocation of acceptance is controlled by contractual privity.").

Thor argues as much, and Plaintiff counters by grouping his revocation claim in with his breach of implied warranty and MMWA claims, and citing *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642 (E.D. Mich. 2003), for the proposition that "[contractual] privity had been abandoned long ago as a requirement" for such claims. (Pl.'s Resp. at 14.) The court in *Michels* did hold that lack of vertical privity did not justify dismissing a breach of implied warranty claim and a derivative MMWA claim on summary judgment. *See Michels*, 298 F. Supp. 2d at 650-51. But the *Michels* decision had nothing to do with revocation claims under Mich. Comp. Laws § 440.2608, since the plaintiff in that case had stipulated to the dismissal of his revocation claim prior to the court's ruling on the summary judgment motion before it. *See Michels*, 298 F. Supp. 2d at 644.

Plaintiff has provided no authority to counter the decisions quoted above, which stand for the proposition that revocation claims under Mich. Comp. Laws § 440.2608 cannot be maintained against remote manufacturers. Accordingly, the

Court will grant summary judgment to Thor on Count II as well.

### 3. Breach of Contract and Unjust Enrichment (Counts III and V)

Plaintiff's breach of contract and unjust enrichment claims (Counts III and V) do not actually implicate the Purchase Agreement or any of the documents associated with it. Instead, Plaintiff argues that the letters sent by his attorney to GRV and Thor, which purported to revoke acceptance under Mich. Comp. Laws § 440.2608, themselves created contracts which Defendants accepted through performance: specifically, by taking possession of the vehicle. (Am. Compl. ¶¶ 33-37; GRV Revocation Letter; Thor Revocation Letter.) Plaintiff's unjust enrichment claim is premised on the same allegations. (Am. Compl. ¶¶ 48-53.)

#### i. Plaintiff cannot maintain breach of contract and unjust enrichment claims against GRV because Thor took possession of the RV, and Plaintiff has not demonstrated an agency relationship between Thor and GRV.

It was Thor, and not GRV, that took possession of the RV at Plaintiff's request. As this act is a central allegation underlying the claims asserted in Counts III and V—the "acceptance" for purposes of the breach of contract claim and the "received benefit" for purposes of the unjust enrichment claim—these two claims plainly lack merit as to GRV.

Possibly relevant here is Plaintiff's argument in his Response to GRV's Motion that GRV entered into an agency relationship with Thor, but Plaintiff

provides no record support for this assertion, and in fact Thor's Registration and Acknowledgement of Receipt of Warranty and Product Information, which Plaintiff signed, expressly states that the undersigned "agree[s] that the selling dealer is not an agent for Thor Motor Coach but is an independent company with no authority to make any representation or promise for Thor Motor Coach." (Thor Registration and Acknowledgement at 2.) The Limited Warranty similarly makes clear that "[t]he dealer is not the Warrantor's agent but is an independent entity." (Limited Warranty at 2.) There is no evidence that tends to demonstrate an agency relationship between the two Defendants, and ample evidence to the contrary.

For these reasons, the Court will grant summary judgment to GRV on Counts III and V.

### ii.     Plaintiff's breach of contract and unjust enrichment claims against Thor are insufficient as a matter of law.

To the extent that Plaintiff asserts a breach of contract claim against Thor, Thor argues that Plaintiff has not demonstrated the elements of an enforceable contract, and this argument is convincing.

"'A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Innovation Ventures v. Liquid Mfg.*, 499 Mich. 491, 508 (2016) (quoting *AFT Mich. v. Michigan*, 497 Mich. 197, 235 (2015)). "An

implied contract must also satisfy the elements of mutual assent and consideration." *Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989). Moreover, "[w]here mutual assent does not exist, a contract does not exist." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372 (2003). "Accordingly, where there is no mutual agreement to enter into a new contract modifying a previous contract, there is no new contract and, thus, no modification. Simply put, one cannot unilaterally modify a contract because by definition, a unilateral modification lacks mutuality." *Id.*

Thor argues that when it picked up the RV at Plaintiff's request, which Plaintiff characterizes as assent to a contract through performance, it was in fact doing so with the intention of performing repairs pursuant to the Limited Warranty. Thor maintains that Plaintiff has not shown that Thor assented to the contract that Plaintiff now asserts, and Thor is correct on this point. Plaintiff testified that his intention in returning the RV to Thor was to give the vehicle back permanently, though he also acknowledged that he also provided Thor with a list of needed repairs, on the reasoning that if "they didn't take it back and I had to take it back, at least it would be fixed, maybe." (Chaudoin Dep. at 22-24.) Plaintiff has also demonstrated that Thor was aware to some degree that Plaintiff wanted to return the RV for good: in an internal email to two other Thor employees, Thor warranty and customer service manager John Vrydaghs summarized the issues that Plaintiff

was having with the RV after noting: "It's a tough sell at the moment- He wants to be free of the coach." (Pl.'s Thor Resp. Ex. 5, Thor and General RV Emails Regarding Mr. Chaudoin at 5.) What Plaintiff has not demonstrated—in this email, in the remainder of the same internal email chain, or anywhere else—is that Thor assented to the permanent return of the RV. The record is plainly devoid of evidence of this central element of Plaintiff's contract claim against Thor, and so that claim cannot survive summary judgment.

"The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc. v. Morang-Kelly Inv., Inc.*, 302 Mich. App. 59, 64 (2013) (quoting *Dumas v. Auto Club Ins. Ass'n,* 437 Mich. 521, 546 (1991)). Thor asserts that it retains possession of the RV only because Plaintiff refuses to pick it up or allow delivery, and Plaintiff does not seem to dispute this. Any "retention of the benefit" on Thor's part is involuntary, and Plaintiff has provided this Court with no legal authority indicating that he can force a buyback by causing Thor to take possession of the RV, refusing to take it back, and then suing Thor for unjust enrichment. Plaintiff's unjust enrichment claim fails as a matter of law.

The Court will grant summary judgment to both Defendants as to Counts III and V.

### 4. Michigan Consumer Protection Act ("MCPA") (Count VI)

The MCPA identifies 38 different types of conduct by sellers as prohibited and legally actionable, *see* Mich. Comp. Laws § 445.903, and Plaintiff's complaint identifies nine of these as applicable in this case (Am. Comp. ¶¶ 54-57). But under Michigan Supreme Court case law on the MCPA, claims arising from Plaintiff's purchase of the RV are exempt from the statute. On that basis, the Court will grant summary judgment to both Defendants on Plaintiff's MCPA claim.

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Chandler v. Specialty Tires of Am. (Tennessee), Inc.*, 283 F.3d 818, 823–24 (6th Cir. 2002) (quotation marks omitted) (quoting *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999)). In adjudicating state-law claims in such cases, the federal district court is "called upon to predict how the state supreme court would decide a case based upon 'all relevant data[.]'" *Id.* (quoting *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995)). Relevant data includes "the state's intermediate court decisions. Intermediate appellate decisions 'are accorded weight, although a federal court is not bound by lower court determinations if convinced by other data that the state's highest court would determine otherwise.'" *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 544 (6th Cir. 2012) (internal citations omitted) (quoting *Bailey v. V. & O*

*Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)).

The MCPA broadly exempts from its own reach any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(a). The Supreme Court of Michigan has made clear that the relevant inquiry in determining whether this exemption applies in a given case "'is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210 (2007) (quoting *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465 (1999)).

Recently, in *Jimenez v. Ford Motor Credit Co.*, No. 322909, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015), the Court of Appeals of Michigan held in an unpublished decision that the sale of a new car was an exempt transaction under Mich. Comp. Laws § 445.904(a), and on that basis upheld the dismissal of an MCPA claim that arose from that sale. *See id.* at *5-*7. The court in *Jimenez* noted that

> the Michigan Vehicle Code specifically requires that a dealer of motor vehicles obtain a dealer license and administration of the code is via the Secretary of State. MCL 257.204. The Secretary of State has the authority to examine the books and records of all persons licensed to sell or buy vehicles that are required to be registered with the Secretary of State. MCL 257.213. The Motor Vehicle Code sets forth the requirements to obtain a dealer license (MCL 247.248), and

prohibits certain conduct by dealers (e.g., MCL 257.248a). Moreover, the Michigan Vehicle Code provides for penalties for proscribed conduct . . .

*Jimenez*, 2015 WL 9318913, at *6-*7 (citations omitted). Based on those considerations, the *Jimenez* court concluded that the sale of a motor vehicle by a licensed dealer was "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States" as contemplated by Mich. Comp. Laws § 445.904(a), and therefore an exempt transaction.

The *Jimenez* court's analysis of motor vehicles under the Michigan Vehicle Code applies equally to recreational vehicles[7] as it did to the Ford Focus at issue in that case. *See id.* at *1. "Every motor vehicle, recreational vehicle, trailer, semitrailer, and pole trailer, when driven or moved on a street or highway, is subject to the registration and certificate of title provisions" of the Michigan Vehicle Code, subject to a list of exceptions that do not apply here. Mich. Comp. Laws § 257.216. Additionally, the Michigan Vehicle Code provisions regarding

---

[7] The Michigan Vehicle Code defines "recreational vehicles" as follows:
"Recreational vehicle" means a new or used vehicle that has its own motive power or is towed by a motor vehicle; is primarily designed to provide temporary living quarters for recreational, camping, travel, or seasonal use; complies with all applicable federal vehicle regulations; and does not require a special highway movement permit under section 719a to be operated or towed on a street or highway. The term includes, but is not limited to, a motor home, travel trailer, park model trailer that does not require a special highway movement permit under section 719a, or pickup camper.
Mich. Comp. Laws Ann. § 257.49a (internal citations omitted).

dealer licensure apply identically to dealers of recreational vehicles as they do to automobile dealers, *see* Mich. Comp. Laws § 257.248, except that recreational vehicle dealers in certain circumstances are permitted to sidestep licensure requirements that they would otherwise be subject to when they conduct business at recreational vehicle shows fewer than 14 days long. *See id.* § 257.248(10). And there is no indication that the Michigan Vehicle Code prohibitions and penalties that the *Jimenez* court observed apply to new car dealers apply any less forcefully to recreational vehicle dealers. *See* Mich. Comp. Laws 257.248h.

In short, the Court can see no basis for distinguishing the transaction at issue in this case from the transaction at issue in *Jimenez*. The Court is mindful of the fact that *Jimenez* is a recent and unpublished decision by Michigan's intermediate appellate court, and equally mindful of the principle that federal courts generally "should be extremely cautious about adopting 'substantive innovation' in state law" in the absence of "some authoritative signal from the state's legislature or judiciary." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015) (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004)). But as noted above, decisions from state intermediate appellate courts are nonetheless to be "accorded weight, although a federal court is not bound by lower court determinations if convinced by other data that the state's highest court would determine otherwise." *Herrera*, 680 F.3d at 544 (citations and quotation marks

omitted). As this Court cannot discern any grounds for concluding that the analysis set forth in *Jimenez* does not apply point-for-point to this case, nor any reason to believe that the Supreme Court of Michigan would determine otherwise, the Court applies the *Jimenez* analysis to the recreational vehicle sale in this case, and holds that the sale of the RV to Plaintiff was exempt from the MCPA under Mich. Comp. Laws § 445.904(a).

Accordingly, the Court will grant summary judgment to both Defendants on Count VI.

### 5.    Product Liability (Count VII)

Plaintiff's product liability claim is premised on his allegation (and supporting testimony) that he injured his face when he fell as a result of a defect in the RV's entry step. Defendants have not shown that no reasonable jury could hold them liable to Plaintiff on his product liability claim, and so the Court will deny their Motions as to this claim.

Both Defendants correctly point out that an essential element of a product liability claim under Michigan law is that "the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller." Mich. Comp. Laws § 600.2946. And while Plaintiff did testify that he did not believe the RV was reasonably safe when it left GRV's control, Defendants then argue, he stated that this belief had to do with the vehicle's slide-out rather

than the allegedly defective step, which according to his Amended Complaint was what caused the injury from which Plaintiff's product liability claim arose. (Am. Compl. ¶¶ 59-66.) Defendants conclude that given that fact, and given that Plaintiff has retained no experts, he has not proffered evidence sufficient to support a product liability claim. Defendants also point out that they filed a Notice of Non-Party Fault including evidence that Lippert, who manufactured the step, subsequently recalled items in that product line. (ECF No. 21.)

These considerations, while relevant, are not enough to justify summary judgment for Defendants on Plaintiff's product liability claim. First, it is true that Plaintiff testified that he didn't believe that the slide-out was reasonably safe at the time he purchased it, and then testified as follows:

> Q Other than the slide out coming out, anything – any other characteristics of the motor home that you believe was unreasonably safe at the time you purchased it?
> A No.

(Chaudoin Dep. 150:8-23.) But this testimony regarding Plaintiff's subjective perception over two years after the date on which Plaintiff bought the vehicle does not foreclose the possibility that the step he alleges caused his injury was not reasonably safe when he received the RV. The fact remains that Plaintiff testified that in January 2015 he "stepped on the step, it broke, [and] I fell flat on my face[,]" (Chaudoin Dep. 91:5-11), and there is no evidence in the record that establishes the reason that the step broke, or the point in time at which the step

became defective. The Court is required at this stage to draw all reasonable factual inferences in Plaintiff's favor, and in the absence of any additional evidence, it would be premature to hold that Plaintiff cannot raise a genuine issue of material fact regarding the safety of that component of the RV at the time it left either Thor's or GRV's control.

The Notice of Non-Party Fault does not compel a contrary outcome. If anything, it makes it at least marginally more plausible that the step was defective as of the time that it left the control of either or both of the Defendants. According to a Safety Recall Report released by the National Highway Traffic Safety Administration (and attached as an Exhibit to the Notice of Non-Party Fault), an estimated three percent of the steps in Lippert's relevant product line, which was produced between May 2007 and December 2015, had a "structural fracture of the center bolt of the fan gear assembly which may cause the fan gear assembly to disengage from the steps[,]" and which could "mak[e] the steps unstable possibly causing a person to fall and resulting in injury." (ECF No. 21 Ex. A, Part 573 Safety Recall Report at 2.) Defendants filed the Notice of Non-Party Fault pursuant to Mich. Comp. Laws § 600.6304, a procedural statute which provides for the apportionment of fault among multiple tortfeasors by a trier of fact. As such, it might well be relevant at the liability and damages stages of trial, but it does not serve to exonerate either Defendant now, at the summary judgment phase.

Finally, Thor argues that "Plaintiff has not retained an expert or any other witness, who will testify that the motorhome was not reasonably safe at the time it left Thor's control." (Def. Thor's Mot. at 19.) But Thor has not provided the Court with legal authority establishing that this is a valid reason to dismiss Plaintiff's product liability claim now as a matter of law. Here again, it would be premature to hold, in view of the record and after drawing all reasonable inferences in Plaintiff's favor, that no reasonable jury could find that the step was not reasonably safe when it left the control of either or both Defendants.

Accordingly, the Court will deny both Defendants' Motions for Summary Judgment as to Plaintiff's product liability claim in Count VII.

### 6.     Fraudulent Misrepresentation, Innocent Misrepresentation, Silent Fraud (Counts VIII, IX, and X)

Plaintiff's asserted claims of fraudulent misrepresentation, innocent misrepresentation, and silent fraud are deficient as a matter of law, since Plaintiff has not adduced evidence that would allow a reasonable jury to find that either Defendant made false statements (knowingly or otherwise) that Plaintiff detrimentally relied upon. The Court will therefore grant Defendants' Motions for Summary Judgment as to those claims as well.

A key element in any fraud claim is knowing (or at least reckless) falsehood on the part of the person alleged to have committed the fraud. *See Titan Ins. Co. v.*

*Hyten*, 491 Mich. 547, 555, 567–68 (2012) (identifying the elements of actionable fraud as: "(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury"). This is equally true of the doctrine of fraudulent concealment (or "silent fraud"), which provides that when a party has "a legal or equitable duty of disclosure, [a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." *Id.*

Plaintiff admitted that he had no contact with any representative from Thor prior to buying the RV. (Chaudoin Dep. 21:10-13.) Plaintiff identified only one statement he believed was false on Thor's part, and that statement was made after the RV was purchased: Plaintiff testified that while Thor indicated that it repaired a portion of the slide-out by replacing the fiberglass in it, he believes that Thor simply refurbished it and repainted it. (Chaudoin Dep. 153:17-154:5.) But even putting aside Plaintiff's concession that he "[has not] been able to prove it as of yet" (Chaudoin Dep. 153:21), there is no indication in Plaintiff's deposition testimony or anywhere else in the record that Plaintiff either relied on this

purportedly fraudulent statement in any respect, or that he suffered injury in doing so. For this reason, Thor is entitled to summary judgment on all fraud claims.

Moreover, Plaintiff has not identified, with any degree of specificity, any knowingly (or recklessly) false statement on the part of GRV. In fact, he testified that he was not aware of any:

> Q . . . Was there anything that -- anyone from General RV told you during the sales process that you later found out was a lie or not true?
> . . .
> [A] Not that I can recall.

(Chaudoin Dep. 59:4-8.)

Plaintiff's claims of affirmative and silent fraud as to both Defendants are also without merit. "A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation." *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 27–28 (1998) (internal citations omitted). In *McConkey*, the Michigan Court of Appeals went on to explain that

> the innocent misrepresentation rule represents a species of fraudulent misrepresentation but has, as its distinguished characteristics, the elimination of the need to prove a fraudulent purpose or an intent on the part of the defendant that the misrepresentation be acted upon by the plaintiff, and has, as added elements, the necessity that it be shown that an unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence

of the misrepresentation inure to the benefit of the party making the misrepresentation.

*Id.*

Plaintiff's innocent misrepresentation claim as pled against Thor fails for the same reason as the fraud claims: Plaintiff has identified no pre-sale statements made by Thor at all, let alone false statements, and the only false statement that Plaintiff ascribes to Thor after the sale was not one on which Plaintiff relied to his detriment.

As to GRV, Plaintiff asserts in his Response that GRV salesman Gary Verhage

> made several representations [regarding] what the 'As Is' condition of the motor coach and conditions of its sale were: that the vehicle was a new motor coach with features in proper working order, that the vehicle could be operated on U.S. roads and highways, that it was under warranty, which General RV would assume and service, etc.

(Pl.'s GRV Resp. at 11.) Plaintiff claims that "several of the representations made by . . . Verhage were found later to be false and induced Plaintiff into the sale." (*Id.*) But this assertion is made without citation and lacks support in the record. In his deposition, Plaintiff characterized his conversation with Verhage in this way:

> Q . . . Prior to deciding to purchase the motor home, do you recall any specifics that you spoke with Gary about?
> A Just the normal stuff about a motor home. What size engine it had, how long it was, what frame it was on, automatic load levelers, just the specifics about that particular motor home.

Q Okay. Did you later find out that any of the information that Gary gave you at the show was inaccurate?

. . .

A I don't know.

(Chaudoin Dep. 23:2-13.) And as mentioned above, Plaintiff further testified that he could not recall any statement made by GRV that he later determined to be untrue. Without some evidence of a specific statement that was later shown to be false, Plaintiff cannot raise a jury question on his innocent misrepresentation claim.

Accordingly, the Court will grant summary judgment to Defendants as to Counts VIII, IX, and X in their entirety.

## IV. CONCLUSION

For all of the reasons stated above, the Court hereby DENIES Defendants' Motions for Summary Judgment (ECF Nos. 25, 26) to the extent that they seek summary judgment on Plaintiff's product liability claims asserted in Count VII of the Amended Complaint (ECF No. 8), and GRANTS Defendants' Motions for Summary Judgment to the extent that they seek summary judgment on all other claims asserted in this action.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: August 15, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2017.

s/D. Tofil
Deborah Tofil, Case Manager